MICHAEL N. FEUER, City Attorney
KATHLEEN A. KENEALY, Chief Deputy City Attorney (SBN 212289)
SCOTT MARCUS, Senior Assistant City Attorney (SBN 184980)
GABRIEL S. DERMER, Assistant City Attorney (SBN 229424)
200 North Main Street, Room 675
Los Angeles, California 90012
Telephone: 213-978-7558
Facsimile: 213-978-7011
gabriel.dermer@lacity.org

Attorneys for Defendant CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| PHILLIP LUNN, CHIE LUNN, and DAVIN LAGARDE GREEN,<br><br>                    Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES,<br><br>                    Defendant. | **CASE NO.: 2:21-cv-00872-DDP-PD**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS COMPLAINT (Fed. R. Civ. Proc. 12(b)(6))**<br><br>[Filed concurrently with Notice of Motion and Motion to Dismiss, Request for Judicial Notice and [Proposed] Order]<br><br><u>Hearing</u><br>Date: May 24, 2021<br>Time: 10:00 a.m.<br>Courtroom: 9C |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

I.   INTRODUCTION ..................................................................1

II.  ALLEGED FACTS AND CLAIMS ...........................................2

III. LEGAL STANDARD ...............................................................3

IV.  ARGUMENT .........................................................................4

   A.   The Separation of Powers Doctrine and Governmental Immunities Bar the Lunn's Negligence and Nuisance Claims...............................................................4

     1.   The Separation of Powers Doctrine Bars These Claims .........................................4

     2.   Governmental Immunities Similarly Bar Plaintiffs' Negligence and Nuisance Claims .....................................................................6

   B.   The Negligence Claim Also Fails Because the City Cannot Be Liable for Common Law Claims....................................................................8

   C.   Plaintiffs' Nuisance and Inverse Condemnation Claims Fail Because Plaintiffs Have Not Suffered a Particularized Harm.........................................................8

   D.   The Lunns Also Fail To Allege A Compensable Taking Under The State or Federal Constitutions.........................................................10

     1.   The City's Failure To Act Cannot Support A Takings Claim; Neither Does Favoring One Party Over Another.......................................................11

   E.   Plaintiff Green's First Amendment Claim Fails.....................................................12

   F.   Plaintiffs' Due Process and Equal Protection Claims Also Fail. ...........................12

V.   CONCLUSION .....................................................................14

i

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)......................................................................3

*Bell At. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................4

*Boxer v. City of Beverly Hills*, 246 Cal. App. 4th 1212 (2016)....................10, 11

*Caldwell v. Montoya*, 10 Cal.4th 972 (1995)...........................................................6

*Citizens for Odor Nuisance Abatement v. City of San Diego*,
   8 Cal.App.5th 350 (2017)..................................................................................5, 7

*Conway v. County of Tuolumne*,231 Cal.App.4th 1005 (2014) ...........................7

*Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892 (9th Cir. 2008) ...................12

*Freeny v. City of San Buenaventura*, 216 Cal.App.4th 1333 (2013)..................7

*Friends of H Street v. City of Sacramento*, 20 Cal.App.4th 152 (1993)..........4, 5, 6, 8

*Fuller v. Department of Transportation*, 89 Cal.App.4th 1109 (2001)..............6

*Gates v. Superior Court*, 32 Cal.App.4th 481, 490 (1995)...................................4

*Georgia Power Co. v. United States*, 633 F.2d 554 (Ct. Cl. 1980) ....................11

*Gerhart v. Lake Cty. Mont.*, 637 F.3d 1013 (9th Cir. 2010)...............................13

*Harding v. Cal. ex rel. Dep't of Transp.*, 159 Cal. App. 3d 359 (1984).............9

*Heffron v. Int'l Society for Krishna Consciousness*, 452 U.S. 640 (1981).....12

*Institoris v. City of L.A.* 210 Cal.App.3d 10 (1989)..............................................9

*Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266 (9th Cir. 1982)..........4

*Johnson v. State of California*, 69 Cal.2d 782 (1968) .........................................4

*Jones v. City of L.A.*, 444 F.3d 1118 (9th Cir. 2006).............................................5

*Jones v. City of L.A.*, 505 F.3d 1006 (9th Cir. 2007)............................................5

*Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012)........................................13

*Love Terminal Partners, L.P. v. United States,* 889 F.3d 1331 (Fed. Cir. 2018)............11

*Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789 (1984)......12

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)...........................................12

*Multani v. Knight*, 23 Cal. App. 5th 837 (2018)..................................................10

*Nicholson v. United States*, 77 Fed. Cl. 605  (2007) ...........................................11

*Pilgrim v. Our Lady of Victories Church,*
  83 Mass.App.Ct. 1126, 2013 WL 1759415, (2013)..........................................9

*Posey v. California*, 180 Cal. App. 3d 836 (1986) ..................................................7

*Ronald S. v. County of San Diego*, 16 Cal.App.4th 887 (1993) .............................4

*San Diego Gas & Elec. Co. v. Superior Court*, 13 Cal. 4th 893 (1996)...............9, 10, 11

*Searcy v. Hemet Unified Sch. Dist.,* 177 Cal.App.3d 792 (1986)...........................8

*Shaw v. Cty. of Santa Cruz*, 170 Cal. App. 4th 229 (2008) ..................................10

*St. Bernard Par. Gov't v. United States*, 887 F.3d 1354 (Fed. Cir. 2018) .............11

*Taylor v. Buff*, 172 Cal.App.3d 384 (1985) ...........................................................7

*United States v. Sponenbarger*, 308 U.S. 256 (1939)...........................................11

*Venuto v. Owens-Corning Fiberglas Corp.*, 22 Cal.App.3d 116 (1971)..................9

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).........................................13

**Statutes**

Cal. Civ. Code § 3493 .............................................................................................10

Cal. Gov't Code §815 ...............................................................................................6

Cal. Gov't Code § 820.2 ...........................................................................................6

Cal. Gov't Code § 845 ...............................................................................................8

iii

## I.   INTRODUCTION

By their lawsuit, Plaintiffs Phillip and Chie Lunn, and Davin LaGarde Green, invite this Court into the role of a great policymaker to tackle one of the greatest challenges facing the City and surrounding areas: homelessness.  They ask the Court to dictate to the City, without taking into account Constitutional implications, resource limitations, geographic concerns, the ever-changing circumstances of the homeless population, or a myriad of other factors, when and how it should enforce its ordinances or other laws and expend its resources to address the homeless crisis.

More specifically, the Lunns contend that homeless encampments and RVs used as shelters by human beings are a nuisance to be abated by Court order, and that the City has a duty to clear areas where encampments are located.  But homeless encampments, and the people that occupy them, are not mere nuisances.  They are a tragedy arising from a multitude of complicated factors, among them poverty, addiction, housing costs, domestic violence, mental illness, disabilities, and unemployment.  Moreover, they cannot be "abated" by an injunction; certainly not one that mandates the City to enforce its local laws without the discretion to weigh the ethical, legal, and fiscal impacts of such enforcement.  As discussed below, under the doctrine of separation of powers, and the principles of governmental immunity rooted therein, the decisions of how and when to enforce anti-camping laws, and what other measures should be implemented to address the homelessness crisis, must be left to the discretion of the City.  For this reason, Plaintiffs claims for negligence and nuisance must fail.

The Lunn's suit fails for additional reasons, too.  The common law negligence claim also fails because City liability must be based on statute.  Both the public nuisance and taking claims fail because Plaintiffs have suffered no specialized harm different in kind from other members of the public.  They also fail because there has been no compensable taking by the City.

Plaintiff Green's claims fare no better.  Ms. Green contends that her free speech, equal protection and due process rights were all violated when the City removed a large

container that was stored on a public walkway, in contravention of a local ordinance prohibiting such storage.  The First Amendment claim fails because the City removed property from the public right of way under a content neutral ordinance, and ample alternative channels exist.  In addition, Ms. Green fails to allege facts to support *Monell* liability.  The Equal Protection and due process claims likewise fail because (a) no suspected class is alleged, so only a rational basis was needed for the City to remove a large container from the public walkway and to ticket some vehicles and not others.  Furthermore, a large freight container is not similarly situated to a vehicle that someone lives in, or to a tent, and the City's removal of the container was certainly rational.  For all these reasons, and those discussed herein, the City's motion to dismiss should be granted.

## II.    ALLEGED FACTS AND CLAIMS

Plaintiffs Phillip and Chie Lunn allege that they live across the street from the South Side of Penmar Golf Course along Rose Ave in Venice and that they paid a premium for a view of the golf course.  Complaint at ¶ 10.  Before November 2019, they had an unobstructed view and used the walkway as jogging and walking trail. *Id*. Since November 2019, the walkway has had an encampment "that has been ignored by the City."  Complaint at ¶ 11.  The Lunns allege that the encampment creates a health and safety risk due to lack of bathrooms, COVID spread, violence, noise and risk of fires. *Id.*  The encampment was "partially abated by the City in late 2020" but the Lunns are concerned that the "duration of the City's planned abatement is unknown." *Id.*

In addition, the Lunns allege that 20 to 30 RVs "have been allowed to remain parked and used by the homeless adjacent to nearby Penmar Park," approximately 240 feet from the Lunn's property.  Complaint at ¶ 12. They further allege that three fires occurred in RVs (in September 2020 and January 2021) and the City has not removed two burned out RV shells. Complaint at ¶ 13.

The Lunns contend that the City's failure to remove the encampments and RVs and/or enforce laws that prohibit such conduct constitutes negligence, public and private

nuisance, and unlawful takings under state and federal law.  *See* Complaint, generally.

Plaintiffs also allege that the "City is [] treating the homeless and property owners adjacent to the Rose-Penmar Walkway in an arbitrary fashion."  Complaint at ¶ 14.  Specifically, Plaintiffs allege that on April 10, 2020, Plaintiff Green "accepted ownership of a large blue cargo container that had been placed at the Rose-Penmar Walkway."  *Id.*   On April 25, 2020, "a notice was placed on the Container announcing that the Container was Mr. Green's private property." Complaint at ¶ 15.  The Container also had the words "Monument to Absurdity, 56.11" on it, which was allegedly intended as political protest regarding the City's "absurd and selective enforcement of Municipal Code 56.11 – the law pertaining to storage of personal property in public spaces."  Complaint at ¶ 19.[1]   At the time, "Ms. Green did not have a home to live in nor the means to move the Container."  Complaint at ¶ 15.  On April 30, 2020 the City removed the Container and left notice where it could be reclaimed.  Complaint at ¶ 16.  Plaintiffs allege that "[t]he notice was inadequate because Ms. Green did not have the funds to retrieve the Container from where the City relocated it."  *Id.*  Plaintiffs further allege that "the City routinely tickets cars owned by property owners but does not ticket or otherwise enforce parking restrictions on RVs parked near Penmar Park."  Complaint at ¶ 17.

Plaintiffs contend that "[t]he City's selective enforcement of removal procedures against Ms. Green is arbitrary and violates her right to equal treatment under the law" and that the "removal of the container was intended and did in fact chill her expression of political speech pertaining to the City's homeless policing practices."  Complaint at ¶¶ 18, 19.

## III.   LEGAL STANDARD

A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] *See* Request for Judicial Notice filed concurrently herewith, Exhibit 1.

Mere "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient to survive a motion to dismiss.  *Bell At. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Courts may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)

## IV.   ARGUMENT

### A. The Separation of Powers Doctrine and Governmental Immunities Bar the Lunn's Negligence and Nuisance Claims

1.  The Separation of Powers Doctrine Bars These Claims

The separation of powers doctrine dictates that core policy issues that require discretion, deliberation, and judgment must "remain beyond the range of judicial inquiry." *Ronald S. v. County of San Diego*, 16 Cal.App.4th 887, 896 (1993) (*citing Johnson v. State of California*, 69 Cal.2d 782, 793 (1968)).  Homelessness is a prime example of a core policy issue.  It raises long-standing, dynamic, and seemingly intractable questions that should be, and can only properly be, addressed by the legislature.  Consequently, when residents of the City disagree with the manner in which homelessness issues are addressed, the proper remedy is for them to raise the issue with their elected officials.  As the California Court of Appeal aptly stated:

> "The remedy for officials who make bad law, who do not adequately enforce existing law, or who do not provide the people with the services they desire, is to replace them with other officials.  But their discretionary decisions in these areas cannot be subject to review in tort suits for damages if government is to govern effectively."

*Gates v. Superior Court*, 32 Cal.App.4th 481, 490, 494 (1995).

California courts consistently have declined to intervene in municipal policy decisions of the nature presented here.  In *Friends of H Street v. City of Sacramento*, 20 Cal.App.4th 152 (1993), a neighborhood association sought an order directing the government to abate certain alleged nuisances, including excessive noise, decreased

4

property values, exposure to noxious fumes, and litter from passing cars.  The Court of Appeal upheld the Superior Court's decision that the requested injunctive relief would constitute a legislative act that is "beyond our power to control."  *Id.* at 164-65.

The Ninth Circuit, too, has acknowledged that while it is within the power of the judiciary to *prevent* the enforcement of laws it deems unconstitutional, it cannot dictate the manner in which the City should combat homelessness:

> "We do not suggest that Los Angeles adopt any particular social policy, plan, or law to care for the homeless. [Citation]. We do not desire to encroach on the legislative and executive functions reserved to the City Council and the Mayor of Los Angeles. There is obviously a 'homeless problem' in the City of Los Angeles, which the City is free to address in any way that it sees fit, consistent with the constitutional principles we have articulated."

*Jones v. City of L.A.*, 444 F.3d 1118, 1138 (9th Cir. 2006) (vacated by settlement at *Jones v. City of L.A.*, 505 F.3d 1006 (9th Cir. 2007).

The California Court of Appeal's *Citizens for Odor Nuisance Abatement v. City of San Diego*, 8 Cal.App.5th 350 (2017) is instructive here.  In *Citizens*, Plaintiff sought mandamus and injunctive relief to require the City of San Diego to abate odors from sea lion waste, which Plaintiff alleged constituted a public nuisance.  The Court found that San Diego had made efforts to clean up the waste but were not entirely successful in doing so.  *Citizens*, 8 Cal.App.5th at 364.  Despite evidence of other alternatives for treating the waste, the Court held that under separation of powers principles, San Diego could not be compelled to consider or adopt them.  *Id.* at 364-65 & fn.18 ("The trial court properly declined to compel the City to use its discretion in a particular manner.") Citing *Friends of H. Street*, *supra*, the Court explained that "any resolution likely lies in the political sphere. . .courts are comparatively ill situated to solve this type of problem." *Id.* at 366.

The same reasoning applies here—indeed, with greater force because the issues

5

associated with homeless persons are plainly far more complex and significant than those associated with marine mammals.  The Lunns concede that, like San Diego in relation to sea lion waste, the City has made an effort to address the homeless encampments.  (*See, e.g.,* Complaint at 7:10-14).  Inherent in these efforts are the City's decisions to selectively enforce laws governing conduct in public rights of way in light of the legal, practical and social issues associated with such enforcement.  As the Court concluded in *Citizens*, although other alternatives for addressing the homeless encampments may exist, the remedy for a Plaintiff's dissatisfaction with the City's policy decisions cannot be found in Court.  Like in *Citizens*, the separation of powers doctrine bars Plaintiffs' claims negligence and nuisance claims.

    2.   <u>Governmental Immunities Similarly Bar Plaintiffs' Negligence and Nuisance Claims</u>

Rooted in the separation of powers doctrine, the principle of governmental immunity, instructs that "the judicial branch should not interfere in the discretionary decisions of the Legislature or the executive branch." *Fuller v. Department of Transportation*, 89 Cal.App.4th 1109, 1117 (2001); *see Friends of H Street,* 20 Cal.App.4th at 165 ("under the separation of powers doctrine, courts lack power to interfere with legislative action at either the state or local level".)  The California Government Claims Act ("Act"), which codifies these immunities, "generally affords a public employee personal immunity from suit when the act or omission for which recovery is sought resulted from 'the exercise of the discretion vested in him." Cal. Gov't Code § 820.2.  "The discretionary immunity of public employees under [section] 820.2 is made applicable to public entities by . . . 815.2(b)."[2]

The Act's "discretionary act" immunity extends to "basic" governmental policy

---

[2] Cal. Gov't Code section 815(a) states: "Except as otherwise provided by statute: [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  Cal. Gov't Code §815(a).

decisions entrusted to broad official judgment." *Caldwell v. Montoya*, 10 Cal.4th 972, 976 (1995).  Among the "discretionary decisions" that courts have held to be immune from suit include: "(1) the decision to pursue a fleeing vehicle [citations]; (2) the decision to investigate or not investigate a vehicle accident [citation]; (3) the failure to make an arrest or to take some protective action less drastic than arrest [citation]; (4) the decision whether to use official authority to resolve a dispute [citation]; and (5) the decision whether to remove a stranded vehicle [citations]." *Conway v. County of Tuolumne*,231 Cal.App.4th 1005, 1015 (2014).

Decisions regarding the enforcement of a municipal code, law enforcement, and sanitation services are basic policy decisions "[a]t the core of th[e] immunity" under section 820.2.  *Freeny v. City of San Buenaventura*, 216 Cal.App.4th 1333, 1341 (2013); *Taylor v. Buff*, 172 Cal.App.3d 384 (1985).  In *Taylor*, the Court held that immunity barred a suit by jail inmates who alleged they were assaulted by other inmates because county officials had made budgetary decisions not to repair locks on cell doors. The Court reasoned: "a decision involving the allocation of limited funds is a purely discretionary one. A governmental decision involving essentially political considerations is regarded as 'discretionary' and thus immune from liability. The category of political decisionmaking includes questions of budgetary and fiscal policy, personnel administration standards, allocation of available resources according to variable priorities of need, and choices between competing plans for accomplishing approved objectives."  *Taylor*, 172 Cal.App.3d at 390 (internal citations and quotations omitted).

Particularly relevant here, courts have specifically held that the decision whether to remove a vehicle parked at the side of the roadway is a discretionary act, and the immunity as provided in section 820.2 of the Government Code is fully applicable. *Posey v. California*, 180 Cal. App. 3d 836, 852 (1986).

Here, the frequency and manner in which the City chooses to deploy law enforcement and sanitation workers to clean up encampments is purely a discretionary matter, which involves, among other things, a "budgetary and fiscal policy" and

"allocation of available resources according to variable priorities of need" subject to immunity under section 820.2. *See Taylor*, 172 Cal.App.3d at 390; *see also Citizens*, 8 Cal.App.5th at 364. In addition to the discretionary immunity provided by section 820.2, the Act provides a specific immunity regarding law enforcement: "Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service." Cal. Gov't Code § 845. The City's decisions regarding how and when to enforce its laws and otherwise address the conditions created by homeless individuals are discretionary and are entitled to immunity under the Act.

To be clear, the present dispute is not whether the tragedy of homeless encampments and related issues should be addressed. Instead, this dispute is about whether Plaintiffs can compel the City, via court action, to enforce its ordinances and policies more frequently or otherwise address issues in the manner that Plaintiffs desire. The Separation of Powers doctrine, the California Constitution, the Government Code immunities, all dictate the answer is "no."

**B. The Negligence Claim Also Fails Because the City Cannot Be Liable for Common Law Claims**

California Government Code section 815 states that a public entity is not liable for any injury except as provided by statute. The Lunn's negligence claim is based on the theory that the City "has breached its duty to its citizens, including and specifically to the Lunns" by not clearing encampment (or only partially clearing it in 2020) and by not ticketing and/or towing RVs parked on street. Such a claim has no statutory basis and cannot stand against the City. *Searcy v. Hemet Unified Sch. Dist.,* 177 Cal.App.3d 792, 802 (1986).

**C. Plaintiffs' Nuisance and Inverse Condemnation Claims Fail Because Plaintiffs Have Not Suffered a Particularized Harm.**

Both public nuisance and California "regulatory takings" claims require Plaintiffs

8

to show they suffered a harm that is different in kind from that suffered by the public at large.  *See, e.g., Friends of H St.,* 20 Cal. App. 4th at 167 (public nuisance and inverse condemnation claims could not survive because plaintiffs suffered no unique, special, or peculiar damages).

California courts routinely dismiss public nuisance claims, often at the pleading stage, where private plaintiffs have not suffered a harm different from the general public. *See, e.g., Venuto v. Owens-Corning Fiberglas Corp*., 22 Cal.App.3d 116, 125 (1971) (affirming dismissal where plaintiffs alleged that emissions from a manufacturing plant caused respiratory disorders because plaintiffs' injury was the same as the public's, even though different in degree); *Institoris v. City of L.A.* 210 Cal.App.3d 10, 20-21 (1989) (plaintiff's concession that nuisance caused by airport operations was of same kind suffered by other nearby residents bars recovery); *accord Pilgrim v. Our Lady of Victories Church,* 83 Mass.App.Ct. 1126, 2013 WL 1759415, at *5-6 (2013) (holding that alleged nuisance created by homeless individuals is communal and cannot be redressed in a private civil suit).

The same is true with regard to a claim of inverse condemnation.  Where a plaintiff's property has not been physically damaged, as is the case here, a plaintiff must allege that the intrusion onto the property has resulted in a burden on the property that is "direct, substantial, and peculiar to the property itself."  *San Diego Gas & Elec. Co. v. Superior Court*, 13 Cal. 4th 893, 940 (1996); *Harding v. Cal. ex rel. Dep't of Transp.*, 159 Cal. App. 3d 359, 366 (1984) (injury or damage is compensable if it is "special or peculiar to the particular property involved, and not such as is common to all property in the neighborhood.").

Here, the Lunns allege that encampments and RVs are a public nuisance because they create health and safety risks due to lack of bathrooms, COVID spread, violence, and risk of fires, as well as noise, dust and odors, and reduction in property values. Complaint at ¶ 11, 22.  Plaintiffs' inverse condemnation claim appears to be based on the same allegations, which the Lunns claim have "limited, damaged, or burdened Plaintiffs'

9

property." Complaint at ¶ 30. It is not surprising that Plaintiffs wish to see homeless encampments eliminated; they represent a monumental tragedy occurring Citywide. But it is a tragedy that affects everyone—residents and visitors, individuals and businesses— equally. Plaintiffs assert as much in stating the "same problems caused on a County and City wide scale alleged in the LA Alliance Action, are presented in the Venice neighborhood at issue in this case." Complaint at ¶ 2. In sum, Plaintiffs cannot state a public nuisance claim or an inverse condemnation claim as they cannot plausibly assert any special or peculiar injury to themselves. *San Diego Gas & Elec.*, 13 Cal. 4th at 940; Cal. Civ. Code § 3493 ("A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise.").

Plaintiffs' private nuisance claim fails for similar reasons. Plaintiffs cannot plausibly allege any of their property rights were invaded. They assert the alleged obstruction of free passage and use of public parks and sidewalks, but those claims do not support an action for private nuisance. "It is long established that an action based upon a private nuisance as that term is known to the law may be maintained only by those whose property rights have been invaded." *Multani v. Knight*, 23 Cal. App. 5th 837, 855 (2018). Because the Lunn's property rights were not invaded, they cannot state a claim for private nuisance.

**D. The Lunns Also Fail To Allege A Compensable Taking Under The State or Federal Constitutions**

State and Federal takings cases considered "in tandem": Although the California Constitution affords somewhat broader protection by also requiring compensation when property is damaged for public use, apart from this difference, the state takings clause is construed congruently with the federal clause. *Shaw v. Cty. of Santa Cruz*, 170 Cal. App. 4th 229, 260 (2008). But Plaintiffs have not stated any taking claim under any theory, as they do not allege physical damage to their property and there are no property rights to unobstructed views and the like. "As a general rule, a landowner has no natural right to air, light or an unobstructed view and the law is reluctant to imply such a right."

10

*Boxer v. City of Beverly Hills*, 246 Cal. App. 4th 1212, 1219 (2016).

Likewise, the alleged diminution in the value of a plaintiff's property is not compensable. A "diminution in property value is not a 'taking or damaging' of the property, but an element of the measure of just compensation when such taking or damaging is otherwise proved." *San Diego Gas & Elec.*, 13 Cal. 4th at 942; *Boxer*, 246 Cal. App. 4th at 1218.

1.  <u>The City's Failure To Act Cannot Support A Takings Claim; Neither Does Favoring One Party Over Another</u>

The Lunn's taking claim, like most of their other claims, is premised on a failure to act, on the City's alleged "indifference." But action is needed to assert a takings claim. In *Georgia Power Co. v. United States*, 633 F.2d 554, (Ct. Cl. 1980), the court held that there was no taking based on the government's decision not to regulate sailboat heights in a public reservoir. "On a takings theory, the government cannot be liable for failure to act, but only for affirmative acts by the government." *St. Bernard Par. Gov't v. United States*, 887 F.3d 1354, 1360 (Fed. Cir. 2018); *Nicholson v. United States*, 77 Fed. Cl. 605, 621 (2007) ("[O]missions or claims that the Government should have done more to protect the public do not form the basis of a valid takings claim."). "The principle that government inaction cannot be a basis for takings liability is equally relevant in the regulatory-takings context. Indeed, every situation in which the Supreme Court has identified a regulatory taking has involved some kind of affirmative government action." *Love Terminal Partners, L.P. v. United States,* 889 F.3d 1331, 1341-42 (Fed. Cir. 2018).

"In any event, takings liability does not arise simply because government action helps some parties but not others. In *Sponenbarger*, for instance, the Supreme Court held that the government did not effect a physical taking when it implemented a flood-control program that only protected certain property owners. The same approach governs in the regulatory-takings context, where the Supreme Court has noted that the Takings Clause is more than a particularized restatement of the Equal Protection Clause." *Id.* (citing *United*

11

1   *States v. Sponenbarger*, 308 U.S. 256, 265 (1939), other citations omitted).

2   **E. Plaintiff Green's First Amendment Claim Fails.**

3     Plaintiff Green presents an untenable claim that her free speech rights were

4   violated by the City's removal of her large cargo container placed at the Rose-Penmar

5   Walkway.  As an initial matter, Plaintiff has not alleged liability against the City

6   pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978).  To state

7   such a claim against the City, Plaintiff has to point to a City policy that restricts or

8   prohibits a person's exercise of their First Amendment rights.  *Dietrich v. John*

9   *Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008).  Plaintiff cannot do so here.

10    Putting that failure aside, for argument's sake, the First Amendment does not

11  guarantee the right to employ every conceivable method of communication at all times

12  and in all places.  *Heffron v. Int'l Society for Krishna Consciousness*, 452 U.S. 640, 647

13  (1981).  As the Complaint makes clear, the law under which the container was removed

14  was Los Angeles Municipal Code section 56.11, "the law pertaining to storage of

15  personal property in public spaces." Complaint at ¶ 19.  That law does not burden

16  speech; it is a content neutral ordinance governing the storage of property in the public

17  right of way, and it authorized the removal of the container.  *See* RJN, Exhibit 1.

18  Moreover, there a myriad number of ways for Plaintiff to express herself separate from

19  storing large containers in the public right of way.  "The Los Angeles ordinance does not

20  affect any individual's freedom to exercise the right to speak and to distribute literature."

21  *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 812 (1984).  In sum,

22  Plaintiff cannot show a violation of her First Amendment rights.

23  **F. Plaintiffs' Due Process and Equal Protection Claims Also Fail.**

24    Plaintiffs essentially assert that the City's alleged failure to uniformly address the

25  homelessness crisis Citywide violates their Constitutional rights.  Not so.

26    As an initial matter, Plaintiffs do not assert they suffered discrimination on the

27  basis of any protected class, nor could they based on their allegations.  An equal

28  protection claim not based on suspect-class discrimination may arise where similarly

situated individuals are intentionally treated differently without a rational relationship to a legitimate state purpose. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

As suggested, the manner and frequency in which the City deploys law enforcement and sanitation workers throughout the City is premised upon, among other things, budgetary and fiscal policies and allocations of available resources. There are certainly rational and legitimate bases that support those decisions. Similarly, freight containers are not similarly situated to tents, nor are vehicles used for shelter similarly situated to vehicles not used for shelter. Plaintiffs cannot show their Constitutional rights were violated.

Nonetheless, Plaintiffs may be seeking to pursue claims under either a "selective enforcement" or a "class of one" theory. Both fail. To prevail on a selective enforcement claim, "a plaintiff must demonstrate that enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose…In order to prove a discriminatory effect, the claimant must show that similarly situated individuals were not prosecuted. The standard for proving discriminatory effect is a demanding one." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 920 (9th Cir. 2012) (citations omitted). To show discriminatory motivation, the plaintiff must show that the state actor "decided to enforce the law against him on the basis of an impermissible ground such as race, religion or exercise of constitutional rights." *Id.* at 922 (citations omitted). Plainly, Plaintiffs' conclusion (Complaint at ¶ 35) that the City "placed a disproportionate burden on Plaintiffs and other persons, communities, and businesses over others" does not state a claim of selective enforcement.

To prevail on a class-of-one claim, a plaintiff must demonstrate that the governmental defendants: (1) intentionally (2) treated plaintiffs differently than other similarly situated property owners (3) without a rational basis. *Gerhart v. Lake Cty. Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2010). As noted, the fact that Plaintiffs aver (Complaint at ¶ 2) that they are facing the "same problems caused on a County and City wide scale" completely negates any claim to a class of one or any discrimination at all.

13

Plaintiffs cannot show they have been treated differently than other similarly situated individuals.  In sum, none of the Plaintiffs' Constitutional rights have been violated by the City's actions or inactions regarding homeless encampments, RVs or storage containers on public walkways.

## V.    CONCLUSION

The proliferation of homelessness is unquestionably a terrible tragedy facing society in general, and the City in particular.  But it is a tragedy that cannot be resolved this action.  The Court should decline the Plaintiffs' invitation to act as a policymaker over the complex societal issues surrounding people experiencing homelessness.  For this reasons, and all the others discussed above, the City respectfully requests the Court grant the City's motion, and dismiss this case with prejudice.

DATED: April 5, 2021

MICHAEL N. FEUER, City Attorney
KATHLEEN A. KENEALY, Chief Deputy City Atty.
SCOTT MARCUS, Senior Assistant City Attorney
GABRIEL S. DERMER, Assistant City Attorney

By:   /s/  Gabriel S. Dermer
      GABRIEL S. DERMER
      Attorneys for Defendant

14