O



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PHILLIP LUNN, an individual;
CHIE LUNN, an individual; and
DAVIN LAGARDE GREEN, an
individual,

                    Plaintiffs,

          v.

CITY OF LOS ANGELES, a
governmental entity

                    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  2:21-CV-00872-DDP-PDx

**ORDER GRANTING
DEFENDANT'S MOTION TO
DISMISS COMPLAINT**

[Dkt. 15]

Presently before the court is Defendant City of Los Angeles's ("City") Motion to Dismiss Complaint.  (Dkt. 15, Mot.)  Having considered the submissions of the parties and heard oral argument, the court GRANTS the motion and adopts the following Order.

**I. BACKGROUND**

Plaintiffs Phillip and Chie Lunn ("Lunns") reside in the City of Los Angeles.  (Dkt. 1, Complaint ("Compl.") ¶ 3.)  Plaintiff Davin LaGarde Green ("Green") is a resident of Missouri.  (*Id.* ¶ 4.)  The Lunns' property is located "across the street from the South Side of Penmar Golf Course."  (*Id.* ¶ 10 ("Rose-Penmar Walkway").)  The Lunns allege that at the time they purchased the property in 2009, "there were no tents, no RV[s] and no other

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

obstructions to their beautiful clear view of the golf course" and that they "paid premium value for that view."  (*Id.*)

The Lunns allege that since November 2019, the Rose-Penmar Walkway "has been used as a homeless camp that has been ignored by the City."  (*Id.* ¶ 11.)  Plaintiffs allege there is "presently a health and safety risk created due to the lack of bathrooms, risk of COVID-19 spread, violence, noise and risk of fires."  (*Id.*)  The Lunns also allege that from November 2020 to the present, the City has allowed "between 20 and 30 RVs" to be parked approximately 240 yards from the Lunns' property.  (*Id.* ¶ 12.)  According to the Lunns, the "City is indifferent to the risks created by these RVs[,]" and "[w]ithin the last six months at least three dangerous fires have been caused by the RVs yet the City allows them to remain."  (*Id.* ¶ 13.)

On or around April 10, 2020, Green "accepted ownership of a large blue cargo container [("Container")] that had been placed at the Rose-Penmar Walkway."  (*Id.* ¶ 14.)  On April 25, 2020, Green "placed on the Container" a "notice . . . announcing that the Container was [ ] Green's private property."  (*Id.* ¶ 15.)  The Container also displayed the words, "Monument to Absurdity, 56:11" which Green alleges "was a political protest regarding the City's absurd and selective enforcement of Municipal Code section 56.11— the law pertaining to storage of personal property in public spaces."  (*Id.* ¶ 19.)  "On April 30, 2020, the City removed the Container and left a notice indicating that Ms. Green could reclaim it from the City."  (*Id.* ¶ 16.)  "Ms. Green observes that while her property was seized, the tents used by the homeless were left intact."

The Lunns and Green thereafter filed a Complaint against the City based on the above events.  (*See* Compl.)  The Lunns assert claims for (1) negligence; (2) public and private nuisance; (3) inverse condemnation; (5) violations of due process and equal protection, and (6) uncompensated taking.  Green asserts claims for (1) violations of due process and equal protection and (2) violation of the First Amendment.

2

The City now moves to dismiss all causes of action under Federal Rule of Civil Procedure 12(b)(1)[1] and 12(b)(6).  (*See* Dkt. 15, 19.)

**II. LEGAL STANDARD**

    **A.  Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject-matter jurisdiction.  "Because standing . . . pertain[s] to federal courts' subject matter jurisdiction, [it is] properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  In the context of a 12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert each claim.  *Id.*

Rule 12(b)(1) jurisdictional challenges can be either facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, as here, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor.  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).  Moreover, the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply with equal force to Article III standing when it is being challenged on the face of the complaint.  *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (applying *Iqbal*).  Thus, in terms of Article III standing, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

    **B.  Rule 12(b)(6)**

---

[1] Due to issues raised in the City's motion to dismiss, the court requested supplemental briefing on the issue of whether Plaintiffs have Article III standing.  (*See* Dkt. 19.)  In light of the supplemental materials, the court considers the allegations of the Lunns' standing on the face of the Complaint.

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

**III. DISCUSSION**

**A. Rule 12(b)(1) - Standing**

The City contends that the Lunns lack Article III standing to assert any of their claims.

At the pleading stage, a plaintiff "must 'clearly … allege facts demonstrating" each element of Article III's standing requirements. *Warth v. Seldin*, 422 U.S. 490, 518 (1975). Those requirements are that the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The jurisdictional question of standing precedes, and does not require, analysis of the merits." *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008). Additionally, "[s]tanding must be shown with respect to each form of relief sought, whether it be injunctive relief,

4

1   damages or civil penalties." *Bates v. United States Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th
2   Cir. 2007) (citing *Friends of the Earth v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185
3   (2000)).

4          The Lunns allege that the City has violated state and federal law by permitting the
5   homeless to encamp near their property.  Specifically, the Lunns allege that they no
6   longer have an "unobstructed view" of the golf course, for which they paid a premium
7   value at the time they purchased their home.  (Compl. ¶ 10.)  The Lunns further allege
8   that at the time of their purchase, "there were no tents, no RV's and no obstructions to
9   their view of the golf course" and that prior to November 2019, the "Lunns and their
10  neighbors enjoyed both the unobstructed view and the use of the walkway as a jogging
11  and walking trail." (*Id.*)  Assuming for the sake of argument that the Lunns'
12  "unobstructed view" is a cognizable property interest, the Lunns have not established
13  that their purported injury is "fairly traceable" to the City's challenged conduct.

14         It is well-established that an injury that results from third party's voluntary and
15  independent actions or omissions cannot serve to establish standing.  *Bennett v. Spear*, 520
16  U.S. 154, 169 (1997); *Simon v. E. Kentucky Welfare Rts Org.*, 426, 40-46 (1976) (ruling that
17  plaintiffs lacked standing to sue the government for hospitals' decisions to deny medical
18  care, allegedly due to federal tax policy).  "When … as in this case, a plaintiff's asserted
19  injury arises from the government's allegedly unlawful regulation (or lack of regulation)
20  of *someone else*, … causation and redressability ordinarily hinge on the response of the
21  regulated (or regulable) third party to the government action or inaction—and perhaps
22  on the response of others as well."  *Lujan*, 504 U.S. at 562.  "[M]ore particular facts are
23  needed to show standing'" in such cases.  *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir.
24  2014) (citing *Nat'l Audubon Soc'y, Inc., v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002)).  "That's
25  so because the third parties may well have engaged in their injury-inflicting actions even
26  in the absence of the government's challenged conduct." *Id.*  "To plausibly allege that the
27  injury was not the result of the *independent* action of some third party, the plaintiff must

28                                                   5

offer facts showing that the government's unlawful conduct is at least a substantial factor motivating the third parties' actions." *Id.* (citation and quotation marks omitted).

Here, the Lunns do not allege that the City directed or controlled homeless individuals to park their RVs near their property. Taking the allegations in the complaint as true, it is evident that the obstruction of the Lunns' view was created by the deliberate choices of homeless individuals. Moreover, the Lunns do not cite any municipal code provision, or state or federal law, that prohibits homeless individuals from parking their RVs or setting up tents on the Lunns' street. Indeed, the Lunns' injury "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Lujan*, 504 U.S. at 562.

Having failed to establish that the City's challenged conduct was a substantial factor motivating the actions of the homeless, the Lunns do not have Article III standing to sue in this Court. The Lunns' claims are therefore dismissed for lack of subject matter jurisdiction.

Next, the court turns to the City's 12(b)(6) challenge with respect to Green's First and Fourteenth Amendment claims.

## B. First Amendment Claim

Green alleges that the City violated her First Amendment right to free speech under the United States and California Constitutions. (Compl. at 10-11, ¶¶ 31-33.) Specifically, Green alleges that the City "intended and did in fact chill [Green's] expression of political speech pertaining to the City's homeless policing practices" by removing Green's container which displayed a political message, while leaving "RVs located adjacent to the location of the [c]ontainer" that did not display political messages. (*Id.* ¶ 33.)

The City argues that Green has not alleged an underlying constitutional violation because Los Angeles Municipal Code ("LAMC") § 56.11, which authorized the City to

remove Green's container, is a content-neutral law that neither burdens speech nor limits Green's ability to express herself in other ways.  (Mot. at 12; Reply at 9.)  While content-based restrictions on political speech in a public forum require the government to show that the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end," *Boos v. Barry*, 485 U.S. 312, 321 (1988), regulations that are unrelated to the content of speech are subject to intermediate scrutiny, and thus will be upheld so long as they are "narrowly tailored to serve a significant government interest" and "leave open ample alternative channels for communication of []information."  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

Green, however, does not meaningfully address the City's argument that § 56.11 is content-neutral, nor does she challenge the City's contention that the restrictions set forth in § 56.11 survive intermediate scrutiny.  "Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate." *B&L Prods., Inc. v. Newsom*, 2022 WL 3567064, at *6 (S.D. Cal. Aug. 18, 2022); *Silva v. U.S. Bancorp*, No. 5:10-cv-1854, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) ("[T]he Court finds that Plaintiff concedes his … claim should be dismissed by failing to address Defendants' arguments in his Opposition.") (citations omitted).

In any event, even if Green's allegations were sufficient to state a viable First Amendment claim, she has not alleged municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  To sue a municipal entity for constitutional violations under 42 U.S.C. § 1983, as Green does here, she must demonstrate the constitutional violation was caused by "a policy, practice, or custom of the entity."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).  While an unconstitutional policy need not be formal or written to create municipal liability; it must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law."  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970); *see also Monell*, 436 U.S. at 691 (unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice).

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and constituency that the conduct has become a traditional method of carrying out policy."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Here, however, Green identifies only one instance where the City allegedly intended to "chill her expression of political speech pertaining to the City's homeless practices"—only when the City removed her container.  Because "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*[,]" *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985), Green has not sufficiently alleged a City policy, practice, or custom to assert a First Amendment violation against the City.

Accordingly, Green's First Amendment claims are dismissed.

### C. Due Process and Equal Protection Claims

Green also alleges violations of Due Process and Equal Protection under the Fourteenth Amendment.  Although the Complaint does not distinguish the two claims, the court addresses each as separate causes of action below.

Due Process under the Fourteenth Amendment bars "any State [from] depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, § 1.  The Due Process Clause specifically encompasses two types of protections: substantive rights (substantive due process) and procedural fairness (procedural due process).

Substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience or interferes with the rights implicit in the concept of ordered liberty."  *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (internal citations and quotation marks omitted).  The substantive component of the Due Process Clause is violated when executive action "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense."  *Colins v. City of Harker Heights*, 503 U.S. 115, 128 (1992).  By contrast, a "procedural due process claim hinges on

proof of two elements: (1) a protectible liberty or property interest; and (2) a denial of adequate procedural protections." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005).

As pled, the Complaint lacks specific facts sufficient to state plausible substantive or procedural due process claims.  The Complaint alleges that the City violated Green's due process rights by removing the container from the Penmar Walkway.  However, Green does not explain of what constitutionally protected life, liberty, or property interest she was deprived.  Nor does she describe any conduct that "shocks the conscience."  Moreover, even if Green had identified a viable interest, she does not explain how the City denied her of adequate procedural protections.

Given these deficiencies, the court grants the motion to dismiss Green's Due Process claims.

Turning to Green's Equal Protection claim, the Equal Protection Clause requires that persons who are similarly situated be treated alike.  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985).  An equal protection claim may be established in two ways. The plaintiff may allege "defendant[] acted with an intent or purpose to discriminate against the plaintiff based upon membership in a *protected class*."  *Lee*, 250 F.3d at 687 (emphasis added).  Such actions are subject to "strict scrutiny" and "will only be sustained if they are suitably tailored to serve a compelling state interest."  *City of Cleburne*, 473 U.S. at 439.  Alternatively, an equal protection claim may arise where similarly situated individuals are intentionally treated differently without a rational relationship to a legitimate state purpose.  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  These claims are typically referred to as "class of one" claims.  *Id.*

Green does not allege that she was treated differently based on her membership in a protected class.  It appears she alleges a "class of one" claim—that the City treated Green differently than other similarly situated homeless individuals by removing only her container.

9

As such, the City argues that there is a rational bases for its alleged conduct.  In its motion, the City argues that the "manner and frequency in which the City deploys law enforcement and sanitation workers throughout the City" depends upon resource availability.  (Mot. at 13; Reply at 10.)  The City also notes that freight containers are treated differently than tents, just as vehicles used for shelter are treated differently than those not used for shelter.  (*Id.*)  This contention is further bolstered by the fact that § 56.11 specifically does not authorize the City to remove RVs, whereas it does permit the City to remove "Excess Personal Property," such as Green's container, that is stored in a public area.  (RJN, Ex. 1.)[2]

As with her First Amendment claim, the Opposition does not directly address the adequacy of the City's reasons for removing Green's container.  Green does not otherwise allege specific facts to support an inference that the City's removal of the container was inconsistent with the City's municipal duties under § 56.11.

The court, therefore, also dismisses Green's Equal Protection claim.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS the City's Motion to Dismiss without leave to amend.

**IT IS SO ORDERED.**

Dated:  September 20, 2022

_____

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE

---

[2] The City's Request for Judicial Notice (Dkt. 15-2) is granted.  Municipal ordinances are proper subjects for judicial notice.  *Tollis, Inc. v. Cnty. of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007).